No. 24-684

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In re UNITED STATES OF AMERICA, et al.

UNITED STATES OF AMERICA, et al.,

*Defendants*,
v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON,

*Respondent on Petition for Writ of Mandamus*,

and

KELSEY CASCADIA ROSE JULIANA, et al.

*Real Parties in Interest—Plaintiffs*.

On Petition for a Writ of Mandamus in No. 6:15-cv-1517-AA

**BRIEF OF AMICI CURIAE FRED T. KOREMATSU CENTER FOR LAW
AND EQUALITY, ET AL. IN SUPPORT OF
PLAINTIFFS' MOTION FOR RECONSIDERATION EN BANC**

**Jeremiah Chin**
Associate Professor of Law
Seattle University School of Law
901 12th Avenue
Seattle, WA 98122
jchin3@seattleu.edu

**James R. May, Esq.**
PA Bar No. 64951
Distinguished Professor of Law
Washburn University School of Law
1700 SW College Avenue
Topeka, KS 66621
james.may@washburn.edu

**Elizabeth Porter**
Co-Director, Appellate Advocacy
Clinic Professor of Law
University of Washington
School of Law
4293 Memorial Way Northeast
Seattle, WA 98195
egporter@uw.edu

**Douglas A. Ruley**
Fla. Bar No. 1048894
Director, Environmental Justice Clinic
University of Miami School of Law
1311 Miller Drive
Coral Gables, FL 33146
druley@law.miami.edu

**Lauren E. Sancken**
Co-Director, Legal Analysis, Research,
and Writing Program
Associate Teaching Professor
University of Washington
School of Law
4293 Memorial Way Northeast
Seattle, WA 98195
sancken@uw.edu

**Jennifer Marlow**
Associate Professor
Department of Environmental Science
& Management
Cal Poly Humboldt
1 Harpst St.
Arcata, CA 95521
jennifer.marlow@humboldt.edu

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT AND RULE 29 STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 29(a)(4)(A), Amicus Curiae Fred T. Korematsu Center for Law and Equality is not a publicly-held corporation, does not issue stock, and does not have a parent corporation and consequently there exists no publicly held corporation which own 10 percent or more of its stock.

Amici received the written consent of Petitioners and Real Parties in Interest to file this brief. No counsel for any party authored any part of this brief, and no party, their counsel, or anyone other than Amici has made a monetary contribution intended to fund its preparation or submission.

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT AND RULE 29 STATEMENT . i**

**TABLE OF CONTENTS** .................................................................................. **ii**

**TABLE OF AUTHORITIES** ........................................................................ **iii**

**IDENTITY AND INTEREST OF AMICI** ....................................................**1**

**ARGUMENT** ....................................................................................................**3**

**I.   THE COURT SHOULD GRANT PLAINTIFFS' MOTION BECAUSE THE ORDER'S HOLDING THAT DECLARATORY RELIEF DOES NOT PROVIDE REDRESS DIRECTLY CONTRADICTS PRIOR CASES FROM THE SUPREME COURT AND THIS CIRCUIT.** ....................................**3**

**II.    THE PANEL'S GRANT OF MANDAMUS IS IMPROPER UNDER FED. R. CIV. P. 15(a) AND IS INCONSISTENT WITH SUPREME COURT AND NINTH CIRCUIT PRECEDENT.** ..........................................................**10**

   **A. Federal courts do not use mandamus to second-guess district courts' decisions to permit parties to amend pleadings.** ..............................**10**

   **B. The panel's grant of mandamus was inconsistent with Supreme Court and Circuit precedent.** ....................................................................**13**

**CONCLUSION** .............................................................................................**16**

**SIGNATORIES** ............................................................................................**18**

**CERTIFICATE OF COMPLIANCE** .......................................................**21**

# TABLE OF AUTHORITIES

## Cases

*Abney v. United States*,

    431 U.S. 631 (1977) …………………………………...…………..12

*Aetna Life Ins. Co. v. Haworth,*

    300 U.S. 227 (1937) …………………………………...…....3, 4, 9

*Carnegie-Mellon University v. Cohill*,

    484 U.S. 343 (1988) …………………………………….........14

*Cheney v. U.S. Dist. Ct.*,

    542 U.S. 367 (2004) …………………………………….........10

*Cohen* v. *Beneficial Indus. Loan Corp.*,

    337 U.S. 541 (1949) …………………………………….........12

*DeGeorge v. U.S. Dist. Ct. for Cent. Dist. of California*,

    219 F.3d 930 (9th Cir. 2000) …………………………………14

*Franklin v. Massachusetts*,

    505 U.S. 788 (1992) …………………………………….....5, 6, 8

*HTP, Inc. v. First Merit Group Holdings*, *Inc.*,

    2022 WL 17958638 (9th Cir. 2022) …………………………....9

*In re Crystal Power Co., Ltd.*,

    641 F.3d 82 (5th Cir. 2011) …………………………………………...14

*In re Flynn*,

    973 F.3d 74 (D.C. Cir. 2020) …………………………………………15

*In re Klamath Irrigation Dist.*,

    69 F.4th 934 (9th Cir. 2023) …………………………………...…13, 14

*In re Orange, S.A.*,

    818 F.3d 956 (9th Cir. 2016) …………………………………...13, 15

*In re United States,*

    895 F.3d 1101 (9th Cir. 2018) …………………………………...16

*In re United States,*

    884 F.3d 830 (9th Cir. 2018) …………………………………....16

*Juliana v. United States*,

    947 F.3d 1159 (9th Cir. 2020) …………………………….………....3

*Juliana v. United States*,

    No. 6:15-CV-01517-AA, 2023 WL 9023339 (D. Or. Dec. 29, 2023) …..…12

*Juliana v. United States*,

    No. 6:15-CV-01517-AA, 2024 WL 1695064 (D. Or. Apr. 19, 2024) ...……15

*Kasey v. Molybdenum Corp. of Am.*,

408 F.2d 16 (9th Cir. 1969) …………………………………..……14

*Maryland Casualty Co. v. Pacific Coal & Oil Co*.,

    312 U.S. 270 (1941) …………………………………….………..4

*Medimunne, Inc. v. Genentech, Inc*.,

    549 U.S. 118 (2007) …………………………...………...4, 9

*Mohawk Indus. v. Carpenter*,

    558 U.S. 100 (2009) …………………….…………………….…...13

*Native Vill. of Kivalina v. ExxonMobil Corp.,*

    696 F.3d 849 (9th Cir. 2012) ……………………………………15

*Reed v. Goertz,*

    598 U.S. 230 (2023) ………………………...…………6, 8, 9

*Redd v. Guerrero,*

    84 F.4th 874 (9th Cir. 2023) …………………………..……2, 3, 8, 9, 10

*Steffel v. Thompson*,

    415 U.S. 452 (1974) …………………………...………5, 6, 8, 9

*U.S. Alkali Export Ass'n v. United States*,

    325 U.S. 196 (1945) …………………………..…………..…10

*United States v. Cloud,*

    102 F.4th 968 (9th Cir. 2024) ……………………...………..…12

*Utah v. Evans*

    536 U.S. 452 (2002) …………………..……..……………….…..……6, 8

*Uzuegbunam v. Preczewski,*

    592 U.S. 279 (2021) …………………..……..……….…..……2, 3, 7, 8, 9

*Van Cauwenberghe v. Biard,*

    486 U.S. 517 (1988) …………………..……..……………….....……13

**Statute**

28 U.S.C. §1292 …………………..……………….……………….....……12

**Rules**

Fed. R. Civ. P. 26 …………….……..……….……………….....……i

Fed. R. App. P. 29 …………………..……..…….……………….....……1

Fed. R. App. P. 35 …………………..……..…….……………….....……8

Fed. R. Civ. P. 15 …………………..……..…….……………….....……11, 14

**Other Authorities**

U.S. Department of Justice, *Justice Manual* …..………….……………..…......11

Fed. R. Civ. P. Notes of Advisory Committee …..………….…….…….…......11

Wright & Miller, Fed. Prac. & Proc. Juris. §3914.6 ……..…………..…......12

## IDENTITY AND INTEREST OF AMICI

The Fred T. Korematsu Center for Law and Equality ("Korematsu Center")[1] and a group of law school clinics, law professors, and climate legal activists submit this amicus curiae brief pursuant to Fed. R. App. P. 29 in support of Plaintiffs' Motion for Reconsideration En Banc. The Korematsu Center is an academic center that focuses on issues regarding race and racial justice and served previously as lead amicus on behalf of race centers in earlier proceedings in *Juliana v. United States* before this Court (No. 18-36082). Amici law school clinics run practicums where law students work with attorneys to support advocacy. Amici law professors and scholars teach, research, and publish in the subject areas of constitutional, environmental, human rights, and administrative law. Amici note that climate change is a racial justice issue that has, and will continue to have, particularly devastating effects on communities and people of color, especially children. Amici submit this brief in support of reconsideration en banc because they are deeply concerned that the majority's decision will make it more difficult for individuals and groups to safeguard their constitutional rights in federal courts.

---

[1] At time of filing, the Center is at the Seattle University School of Law but is moving on July 1, 2024, to the University of California, Irvine School of Law. The Korematsu Center does not, in this brief or otherwise, represent the official views of Seattle University or the University of California, Irvine School of Law.

1

## SUMMARY OF THE ARGUMENT

The *Juliana* youth plaintiffs continue to defend their constitutional rights and seek redress from the federal courts, the primary guardians of these rights. Unfortunately, the Panel failed to protect these rights when it issued the extraordinary remedy of mandamus.

Turning on the issue of standing, the Panel's May 1, 2024, Order (the "Order") directly conflicts with decisions of the Supreme Court and this Circuit that declaratory relief alone provides sufficient redress. The Order's erroneous statements concerning declaratory relief contradict controlling precedent from the Supreme Court, including *Uzuegbunam v. Preczewski*, 592 U.S. 279, 141 S. Ct. 792 (2021), and are flatly inconsistent with this Circuit's recent decision in *Redd v. Guerrero,* 84 F.4th 874, 876-78 (9th Cir. 2023).

Equally erroneously, the Order's extraordinary issuance of mandamus is improper because it restricted a district court's discretionary decision to permit a party to amend a pleading. Moreover, the Order conflicts with, and does not cite or apply, the Supreme Court's and this Circuit's authoritative decisions concerning when mandamus is proper.

The Circuit Court must recognize the grievous errors in the Order under multiple Supreme Court cases and its own precedent and grant Plaintiffs' Motion for Reconsideration En Banc.

## ARGUMENT

I. **THE COURT SHOULD GRANT PLAINTIFFS' MOTION BECAUSE THE ORDER'S HOLDING THAT DECLARATORY RELIEF DOES NOT PROVIDE REDRESS DIRECTLY CONTRADICTS PRIOR CASES FROM THE SUPREME COURT AND THIS CIRCUIT.**

This case turned on the redressability element of standing, as youth plaintiffs have established injury and causation. *Juliana v. United States*, 947 F.3d 1159, 1168-69 (9th Cir. 2020). Absent citation to any authority, the Order asserts that declaratory relief alone "would do nothing" toward redress without further court action, and therefore the youth plaintiffs' request for a declaratory judgment was not justiciable. Order at 3. The Circuit Court should grant Plaintiffs' Motion because these erroneous statements contradict a long line of precedent from the Supreme Court, including *Uzuegbunam v. Preczewski*, 592 U.S. 279, 141 S. Ct. 792 (2021). They also are flatly inconsistent with this Circuit's recent decision in *Redd v. Guerrero,* 84 F.4th 874, 876-78 (9th Cir. 2023), which relied on those Supreme Court cases to hold that declaratory relief alone provides sufficient redress for standing.

The Supreme Court considered standing for claims brought pursuant to the Declaratory Judgment Act soon after its passage in 1934. In *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227 (1937), an insurance case, the Court reversed the lower courts' dismissal for lack of standing and held that requests for a declaratory judgment presented justiciable controversies when they are "definite and concrete,

3

touching the legal relations of parties having adverse interests," thereby giving rise to relief through a decree of conclusive character, as distinguished from an advisory opinion upon hypothetical facts. 300 U.S. at 240-41. Thus, when the court can determine the legal rights of the parties based upon the facts alleged, as in the present case, the plaintiff has demonstrated standing. *Id.* at 241. Contrary to the Order, the Court held that the availability of injunctive relief "is not essential to the exercise of judicial power." *Id.*

The Supreme Court again considered standing for declaratory judgment claims in *Maryland Casualty Co. v. Pacific Coal & Oil Co*., 312 U.S. 270 (1941). Citing *Aetna Life*, the Court held that the test for standing under the Declaratory Judgment Act is:

> whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

312 U.S. at 273. Applying this test, the Court held that standing existed because there was an actual controversy between the parties. *Id*. at 274.

The *Maryland Casualty* test still controls, as demonstrated by *Medimunne, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007). *Medimmune* quoted *Maryland Casualty* in a patent dispute brought under the Declaratory Judgment Act in holding that standing existed. *Id*. If the *Maryland Casualty* and *Medimmune* test were applied to this case, as it should have been, there would be no doubt that the Plaintiffs

4

have standing to pursue their request for a declaratory judgment.  This is especially clear since the Defendants "by and large ha[ve] not disputed the factual premises of the plaintiffs' claims." *Juliana*, 947 F.3d at 1167.

The Supreme Court again considered standing under the Declaratory Judgment Act in *Steffel v. Thompson*, 415 U.S. 452 (1974), which involved alleged violations of First Amendment rights.  In reversing a lower court ruling that declaratory relief was inappropriate because injunctive relief was inappropriate—essentially the same ruling as the Panel made in this case—the Court held that the congressional scheme made federal courts the primary guardians of constitutional rights and expressly authorized declaratory relief because it is a less abrasive remedy than an injunction.  *Id.* at 463.  After reviewing the legislative history of the Declaratory Judgment Act, the Court affirmed that "a federal court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." *Id*. at 468.  The Court emphasized that, though a declaratory judgment is a milder form of relief than an injunction, a declaratory judgment nonetheless has the force and effect of a final judgment, and therefore relevant governmental authorities are expected to give effect to declaratory judgments of unconstitutionality.  *Id*. at 469-471.

The Supreme Court further considered standing in cases seeking a declaratory judgment in *Franklin v. Massachusetts*, 505 U.S. 788 (1992), which involved

constitutional claims against the procedures used during the 1990 decennial census. *Franklin* concluded that the claimed injury was redressable by "declaratory relief against the Secretary alone." *Id.* at 803.  Consistent with *Steffel*, the Court explicitly assumed that the executive and congressional officials would abide by an authoritative interpretation of the constitution by the federal courts, "even though they would not be directly bound by such a determination." *Id.*; *accord*, *Utah v. Evans*, 536 U.S. 452, 463-64 (2002) (same holding as to redress through declaratory relief in a similar case challenging the 2000 census because it was "substantially likely" that officials would abide by the court decision).

Most recently, the Supreme Court addressed standing and declaratory judgments yet again in *Reed v. Goertz*, 598 U.S. 230 (2023), which involved procedural due process claims.  The Court held that a declaratory judgment provided redress because it was substantially likely that the relevant governmental official would abide by that order. *Id.* at 234 (citing *Utah v. Evans*, 536 U.S. at 464).  The Court explained that such an order effectuates a change in the legal status between the parties, and the practical consequences of that change amount to "a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Id*.  Likewise, a declaratory judgment in the present case would effectuate a change in the legal status between the Plaintiffs and the federal defendants and significantly would increase the likelihood that the Plaintiffs would

obtain other relief that redresses their injuries, such as changes in federal government policies and decisions from the agencies these named officials administer.

If there was any remaining doubt about declaratory relief providing sufficient redressability for standing, it was resolved in *Uzuegbunam*. In this First Amendment case, the Court considered whether nominal damages alone, a form of declaratory relief, provided sufficient redress for standing. *Uzuegbunam*, 141 S. Ct. at 802. The Court answered that question in the affirmative, holding that nominal damages affect the behavior of the defendant toward the plaintiff and thus provide redress. *Id*. at 801. *Uzuegbunam* is controlling here because it affirmed that a partial remedy satisfies redressability and that declaratory relief in the form of nominal damages alone provided sufficient redress for standing.

Curiously, the Order ignored almost all these Supreme Court cases. Even worse, it misread *Uzuegbunam,* asserting that it was a retrospective "damages cases which says nothing about the redressability of declaratory judgments." Order at 4. This is contrary to what the Supreme Court expressly stated: that nominal damages are a form of declaratory relief that frequently are awarded prospectively. *Uzuegbunam*, 141 S. Ct. at 798. Critically, the Supreme Court's review of the history and development of declaratory judgments and nominal damages concluded that a rule against nominal damages "would have meant, in many cases, that there was no remedy at all for those rights, such as due process or voting rights, that were not

7

readily reducible to monetary valuation." *Id.* at 800.  Here, the youth plaintiffs' right to a climate capable of sustaining human life plainly falls within the scope of "important, but not easily quantifiable, nonpecuniary rights" at stake in *Uzuegbunam.*  *Id.*

The Order also contradicts the recent Ninth Circuit case of *Redd v. Guerrero*, 84 F.4th 874, 884 (9th Cir. 2023).  *Redd* relied on *Uzuegbunam*, along with *Reed, Utah*, *Steffel*, and *Franklin*, in holding that declaratory relief alone provided sufficient redress for a claimed violation of procedural due process.  *Redd* emphasized the *Uzuegbunam* holding that a partial remedy satisfies the redressability requirement, along with the *Reed* and *Franklin* holdings that a declaratory judgment effectuates a change in the legal status between the parties that increases the likelihood of further relief because it is substantially likely that governmental officials will abide by the court order.  *Id*.

If a declaratory judgment provided sufficient relief to meet redressability in *Redd*, the same holds here in a proceeding raising the exceptionally important question of the constitutional right of the youth plaintiffs to a livable climate.  Fed. R. App. P. 35(a)(2).  Here, as in *Redd*, a declaratory judgment would effectuate a change in the legal status between the parties.  Declaratory judgments take special significance in cases like this where multiple youth plaintiffs are unable to effectuate policy change through ordinary democratic means since they are not yet of voting

age. A declaratory judgment would recognize their vested right to a livable climate, a "necessary redress for a completed violation of a legal right." *Uzuegbunam*, 141 S. Ct. at 802. Moreover, it is highly likely that the Defendants would abide by a judgment from the federal courts that their actions are and have been unconstitutional.

Beyond the direct conflict between *Redd* and the Order, this Court is bound by decisions of the Supreme Court, which consistently has ruled in favor of finding standing in declaratory judgment actions. Indeed, *Redd* relied on this long series of Supreme Court decisions, including *Reed*, *Uzuegbunam*, *Franklin*, and *Steffel*, in holding that "the declaratory relief [the plaintiff] seeks would redress his injuries." *Redd,* 84 F.4th at 884, 886. Faithful application of these Supreme Court cases requires the same conclusion in this case.

Moreover, the fundamental test for standing for claims brought pursuant to the Declaratory Judgment Act is whether, under the facts alleged, there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Medimunne,* 549 U.S. at 127; *accord, HTP, Inc. v. First Merit Group Holdings*, *Inc*., 2022 WL 17958638, at *1 (9th Cir. 2022) (quoting *Medimmune* and *Aetna Life*). Applying this controlling test demonstrates that these youth plaintiffs plainly have standing to pursue their claims under the Declaratory Judgment Act.

The Circuit Court should recognize the serious errors in the Order under multiple Supreme Court cases and the gross inconsistencies between the Order and this Circuit's decision in *Redd* and grant the Plaintiffs' Motion for Reconsideration En Banc.

## II.    THE PANEL'S GRANT OF MANDAMUS IS IMPROPER UNDER FED. R. CIV. P. 15(a) AND IS INCONSISTENT WITH SUPREME COURT AND NINTH CIRCUIT PRECEDENT.

The extraordinary measure of mandamus is improper when used to bridle a district court's decision to permit a party to amend a pleading. However, in a ruling without precedent, the Panel did exactly that. Allowing such a writ to proceed threatens to normalize the use of mandamus to terminate controversial litigation. Federal courts have not used mandamus to second-guess district courts' decisions to permit parties to amend pleadings. The Order is out of step with the Federal Rules and Ninth Circuit practice.

### A. Federal courts do not use mandamus to second-guess district courts' decisions to permit parties to amend pleadings.

Mandamus is an extraordinary form of relief, intended to prevent abuses of power by district courts. It is not "a substitute for the regular appeals process." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–81 (2004); *U.S. Alkali Export Ass'n v. United States*, 325 U.S. 196, 198 (1945) (rejecting mandamus petition seeking reversal of denial of motion to dismiss). Yet the Defendants have repeatedly

invoked mandamus for precisely that inappropriate reason, notwithstanding the Government's own practice manual. U.S. Department of Justice, *Justice Manual*, https://www.justice.gov/jm/civil-resource-manual-215-mandamus (last visited June 23, 2024) (internal citations omitted) (mandamus available "in exceptional circumstances of peculiar emergency or public importance.").

The lower court's discretionary decision to permit pleading amendment is not an abuse of power that would constitute an appropriate basis for mandamus. Federal district courts have wide discretion to permit parties to amend pleadings. Indeed, the authority of district courts to grant leave to amend pleadings "freely" has been a cornerstone of federal practice and Rule 15 since the invention of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15(a)(2); Fed. R. Civ. P. advisory committee's note to 1937 amendment, Uscourts.gov/rules-policies/archives/committee-reports/advisory-committee-rules-civil-procedure-april-1937 ("Provision for amendment of pleading before trial, by leave of court, is in almost every code. If there is no statute the power of the court to grant leave is said to be inherent.") (internal citations omitted). Here, the district court adhered to the letter and spirit of Rule 15.

To be sure, the temptation for opposing parties to seek immediate appellate review of unfavorable jurisdictional rulings is understandably strong. Yet Congress, the Supreme Court, and this Circuit have designed a system that postpones appeal

11

of these issues until after final judgment. *See* Wright & Miller, Fed. Prac. & Proc. Juris. §3914.6 (3d Edition) ("Whatever the cost in some particular cases, it is hoped that in general and for most cases the [final judgment] rule works better for both litigants and the court system.").

The narrow exceptions to the final judgment rule do not apply here. First, litigants may occasionally obtain immediate review of non-final decisions under 28 U.S.C. §1292(b). However, because Congress sought to make such interlocutory appeals the exception rather than the rule, §1292(b) requires certification from both the district court and the court of appeals. Here, the district court declined to certify a question for interlocutory appeal, thus mooting this option. *Juliana v. United States*, No. 6:15-CV-01517-AA, 2023 WL 9023339 (D. Or. Dec. 29, 2023).

Second, the Supreme Court has carved out an exception to the final judgment rule under the so-called collateral order doctrine. The doctrine recognizes that a "small class" of prejudgment orders have a "final irreparable effect on the rights of the parties." *Cohen* v. *Beneficial Indus*. *Loan Corp*., 337 U.S. 541, 545–46 (1949). It allows immediate appeal of non-final decisions that are "completely separate from the merits" and "effectively unreviewable after final judgment." *United States v. Cloud*, 102 F.4th 968 (9th Cir. 2024); *Abney v. United States*, 431 U.S. 631 (1977) (allowing collateral order appeal of denials of a motion to dismiss on double jeopardy grounds).

Collateral order doctrine relief does not apply to a decision to allow amendment of pleadings. The Supreme Court has refused to extend the collateral order doctrine to routine jurisdictional and discovery decisions. *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 108-09 (2009) (noting that courts "routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system"); *Van Cauwenberghe v. Biard*, 486 U.S. 517, 526-27 (1988) (rejecting collateral order review of denials to dismiss on personal jurisdiction and *forum non conveniens* grounds).

In this case, the typical channels of appellate review are available to appeal the discretionary decision permitting amendment of pleadings, rendering mandamus inappropriate.

### B. The panel's grant of mandamus was inconsistent with Supreme Court and Circuit precedent.

This Circuit has routinely declined to exercise mandamus to reverse interlocutory discretionary decisions of trial courts. "[I]f appellate courts were to issue writs of mandamus routinely after denial of a motion to dismiss" on routine jurisdictional decisions properly left to the trial court, "they would be allowing non-statutory rights of interlocutory appeal." *In re Orange, S.A.*, 818 F.3d 956, 963–64 (9th Cir. 2016) (denial of motion to dismiss for *forum non conveniens*). *See also In re Klamath Irrigation Dist.*, 69 F.4th 934, 945 (9th Cir. 2023), *cert. denied sub nom.*

13

*Klamath Irrigation Dist. v. United States Bureau of Reclamation*, 144 S. Ct. 552, 217 L. Ed. 2d 293 (2024) (motion to remand); *DeGeorge v. U.S. Dist. Ct. for Cent. Dist. of California*, 219 F.3d 930, 934 (9th Cir. 2000) (motion to dismiss on grounds that counts in indictment were time-barred); *Kasey v. Molybdenum Corp. of Am.*, 408 F.2d 16, 20 (9th Cir. 1969) (motion for change of venue).

The panel's decision to use mandamus to reverse a lower court's grant of a motion to amend a pleading appears to be unprecedented. We know of no case in the federal system in which an appellate court, including the Supreme Court, has granted mandamus to reverse a federal trial court's grant of a motion to amend under Fed. R. Civ. P. 15, and the Defendants cite to none. Furthermore, we know of no other case in which the government has sought mandamus regarding a motion to amend a pleading, and the Defendants cite to none.

When given the opportunity, the Supreme Court, federal appellate panels, and *en banc* panels have declined to exercise mandamus to reverse discretionary decisions of trial judges. *See e.g.*, *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988) (affirming *en banc* reversal of divided panel's grant of writ of mandamus, finding district court judge had discretion to remand removed case to state court after granting plaintiffs' request to amend complaint to remove federal claim); *In re Crystal Power Co., Ltd.*, 641 F.3d 82 (5th Cir. 2011) (mandamus not available to review allegedly improper denial of motion to remand in absence of final judgment

from trial court); *In re Flynn*, 973 F.3d 74 (D.C. Cir. 2020) (denying mandamus to review lower court's denial of a motion to dismiss criminal case after defendant entered guilty plea to charge).

Outside of this case, this Circuit has never granted a writ of mandamus to remedy Article III standing challenges. Even in cases of undisputed public significance, courts have not treated standing as an issue of first impression such as to make it a fit subject for a writ of mandamus. Instead, challenges to Article III standing are "bread-and-butter" trial court decisions, subject to review on appeal from final judgment. *Juliana v. United States*, No. 6:15-CV-01517-AA, 2024 WL 1695064 (D. Or. Apr. 19, 2024). *See e.g. FDA v. Alliance for Hippocratic Medicine*, 602 U. S. ____, 144 S. Ct. 1540 (2024) (holding that plaintiffs lacked Article III standing to challenge FDA's actions regulating mifepristone and reversing the decisions of both the district court and the Fifth Circuit upholding plaintiffs' standing); *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012) (a public and private nuisance climate change case appealing in part district court motion to dismiss for lack of Article III standing). Neither the Order nor the Defendants present a persuasive justification for departing from this norm.

Furthermore, the "foremost 'prerequisite[ ]' to invoking statutory mandamus authority is that the party seeking issuance of the writ 'have no other adequate means to attain the relief he desires.'" *In re Orange, S.A.*, 818 F.3d 956, 963–64 (9th Cir.

15

2016) (internal citations omitted).  The Defendants' failure to "establish that [it] will suffer prejudice not correctable in a future appeal" is precisely why this Court denied the Defendants' prior petitions for writ of mandamus. *In re United States,* 895 F.3d 1101, 1106 (9th Cir. 2018); *In re United States,* 884 F.3d 830, 836 (9th Cir. 2018). The Circuit Court should hold that mandamus was no more appropriate now then it was in the prior petitions.

## CONCLUSION

The Circuit Court must acknowledge the errors in the Order concerning declaratory relief and the unprecedented issuance of mandamus under multiple Supreme Court cases and this Circuit's previous decisions through granting Plaintiffs' Motion for Reconsideration En Banc.

June 27, 2024

Respectfully Submitted,

**s/ Jeremiah Chin**
Associate Professor of Law
Seattle University School of Law
901 12th Avenue
Seattle, WA 98122
jchin3@seattleu.edu

**s/ James R. May, Esq.**
PA Bar No. 64951
Richard S. Righter Distinguished
Professor of Law
Washburn University School of Law
1700 SW College Avenue
Topeka, KS 66621
james.may@washburn.edu

16

**s/ Elizabeth Porter**
Co-Director, Appellate Advocacy
Clinic Professor of Law
University of Washington
School of Law
4293 Memorial Way Northeast
Seattle, WA 98195
egporter@uw.edu

**s/ Lauren E. Sancken**
Co-Director, Legal Analysis, Research,
and Writing Program
Associate Teaching Professor
University of Washington
School of Law
4293 Memorial Way Northeast
Seattle, WA 98195
sancken@uw.edu

**s/ Douglas A. Ruley**
Fla. Bar No. 1048894
Director, Environmental Justice Clinic
University of Miami School of Law
1311 Miller Drive
Coral Gables, FL 33146
druley@law.miami.edu

**s/ Jennifer Marlow**
Associate Professor
Department of Environmental Science
& Management
Cal Poly Humboldt
1 Harpst St.
Arcata, CA 95521
jennifer.marlow@humboldt.edu

*Counsel for Amici Curiae*

## SIGNATORIES

Bieta Andemariam, Esq.
Legal Director, Avaaz

J. Michael Angstadt, J.D., PH.D.
Assistant Professor
Environmental Studies Program

Hope Babcock
Former Director of the Environmental Law Clinic
Georgetown University Law Center

Wil Burns
Co-Director, Institute for Responsible Carbon Removal
American University

Erin Daly
Professor of Law and Director of the Dignity Rights Clinic
Global Liaison for Graduate Programs
Co-Founder, Dignity Rights Institute
Delaware Law School

Richard M. Frank
Professor of Environmental Practice
Co-Director, California Environmental Law & Policy Center
School of Law
University of California, Davis

Ameya Gehi, Staff Attorney
Conservation Law Foundation

Mia Montoya Hammersley
Assistant Professor of Law & Director
Environmental Justice Clinic
Vermont Law & Graduate School

Etelle Higonnet, Esq.
Board Member, Climate Defiance

18

Jennifer S. Hendricks
Professor, University of Colorado Law School

Keith H. Hirokawa
Distinguished Professor of Law
Albany Law School

Kirk W. Junker
Professor
Duquesne University
Kline School of Law

Kenneth T. Kristl, Esq.
Professor of Law & Director,
Environmental & Natural Resources Law Clinic
Widener University Delaware Law School

Dr. Gregg Macey
Director, Center for Land, Environment & Natural Resources
University of California Irvine School of Law

Daniel Magraw
Senior Fellow, Foreign Policy Institute
Johns Hopkins University
School of Advanced International Studies

Anthony Moffa
Professor of Law
University of Maine School of Law

Jessica Owley
Professor and Environmental Law Program Director
University of Miami School of Law

Bernard P. Perlmutter, Esq.
Professor of Law
Co-Director, Children & Youth Law Clinic
University of Miami School of Law

19

Theresa Pinto, Esq.
Senior Staff Attorney and Policy Analyst
The PEER Group

Zygmunt J.B. Plater
Professor emeritus, Founder of Land & Envtl. Law Program,
Boston College Law School,
Professor, adjunct, Coordinator of Envtl. Law-Teaching Program
University of Maine School of Law

Emily Shirley, Esq.
Legal Director, Thames Blue Green Economy (UK)

William J. Snape, III
Professor and Assistant Dean
Director, Program on Environmental and Energy Law (PEEL)
American University, Washington College of Law

Mae C. Quinn
Professor of Law
Penn State University*
*Affiliation for identification purposes only

## CERTIFICATE OF COMPLIANCE

I hereby certify the attached amicus brief is proportionally spaced, has a typeface of 14 points or more, and contains less than 4,200 words based on the word-processing system used to prepare the brief.

s/_____*Douglas A. Ruley*_____
Attorney for Amici Curiae

Date:____June 27, 2024_____